**FILED**

IN THE UNITED STATES DISTRICT COURT
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAN 1 7 2001

**LAWRENCE LOPEZ,**

    **Plaintiff,**

vs.                                                                                              Civ. No. 99-1473 LH/RLP

**KENNETH S. APFEL,**
**Commissioner, Social Security Administration,**

    **Defendant.**

## UNITED STATES MAGISTRATE JUDGE'S
## ANALYSIS AND RECOMMENDED DISPOSITION[1]

1.    Plaintiff, Lawrence Lopez (Plaintiff herein), filed applications for Disability Income Benefits and Supplemental Security Income Benefits on January 28, 1994, alleging that he had been disabled since January 1, 1991 (Tr. 29, 33). His applications were denied at the first and second levels of administrative review. In a decision dated July 25, 1995, an Administrative Law Judge (ALJ herein) found that Plaintiff had been disabled from January 15, 1991 to October 8, 1993, and awarded benefits for that closed period. He also found that as of October 8, 1993, Plaintiff had the residual functional capacity for the full range of light work. He then applied the Medical-Vocational guidelines and determined that Plaintiff was no longer disabled. (Tr. 263-277). On October 16, 1997, the Appeals Council remanded with instructions to address specific deficiencies in the original ALJ's decision. A rehearing was conducted on December 10, 1997. A second ALJ denied Plaintiff's claim in a decision dated

---

[1] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. §636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the ten (10) day period if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.



December 19, 1997. The Appeals Council declined review on November 2, 1999. Plaintiff has filed suit contesting the denial of his claim. The matter is now before the Court on Plaintiff's Motion to Reverse the Commissioner's second decision, seeking a Remand for additional proceedings.

I.   **Standard of Review**

2.   This Court reviews the Commissioner's decision to determine whether the record contains substantial evidence to support the ALJ's findings, and to determine whether the correct legal standards were applied. **Castellano v. Secretary of Health & Human Services**, 26 F.3d 1027, 1028 (10th Cir.1994). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" **Soliz v. Chater**, 82 F.3d 373, 375 (10th Cir.1996) (quoting **Richardson v. Perales**, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). In reviewing the Commissioner's decision, the court cannot weigh the evidence or substitute its discretion for that of the Commissioner, but I have the duty to carefully consider the entire record and make my determination on the record as a whole. **Dollar v. Bowen**, 821 F.2d 530, 532 (10th Cir.1987).

3.   The Commissioner has established a five-step sequential evaluation process to determine if a claimant is disabled. **Reyes v. Bowen**, 845 F.2d 242, 243 (10th Cir.1988). If a claimant is determined to be disabled or not disabled at any step, the evaluation process ends there. **Sorenson v. Bowen**, 888 F.2d 706, 710 (10th Cir.1989). The burden of proof is on the claimant through step four; the burden of proof shifts to the Commissioner at step five.

2

## II.     Vocational and Medical Facts

4.      Plaintiff was born on August 29, 1961, and completed the 9th grade.  (Tr. 308, 69). He has work experience as a lens cutter, electrical helper, materials handler and furniture mover.  (Tr. 363-366).

5.      Plaintiff was injured in a fall at work in January 1991.  (Tr. 93).  He developed impingement syndrome of the left shoulder, for which he underwent corrective surgery on June 28, 1991[2].  (Tr. 124-126).  Three months after surgery, his treating surgeon, Dr. Tabet, indicated that even with successful surgery, Plaintiff would have trouble repetitively reaching and lifting overhead, and should be retrained for a job that did not involve that activity.  (Tr. 189).

6.      By October 24, 1991, Plaintiff developed tingling and numbness of his left hand. (Tr. 188).  An EMG study disclosed ulnar nerve entrapment at the elbow.  (Tr. 122-123).  Dr. Tabet performed an anterior transposition of the ulnar nerve on April 23, 1992.  (Tr. 118, 183).  By July 1992, E.M.G. studies showed evidence of enervation changes of the left upper extremity, most compatible with disturbance of the ulnar nerve.  (Tr. 103).  Plaintiff had also started "clawing" his left hand.  These changes indicated Plaintiff had incurred permanent damage to the ulnar nerve, and might have permanent weakness of the left hand.  Dr. Tabet anticipated that spasms in the hand would improve with time.  (Tr. 179).

7.      By August 1992, Plaintiff developed signs of nerve impingement in his right shoulder. (Tr. 178).  Dr. Tabet performed arthroscopic decompression of the right rotator cuff on September 18, 1992.  (Tr. 128-134).  Plaintiff subsequently attended physical therapy for

---

[2]Arthroscopic partial excision of the anterior labrum; debridement and partial excision of the tendon; bursectomy; division of the C-A ligament; acromioplasty and resection of the distal clavicle.

3

both shoulders. (Tr. 175). By November 1992 Plaintiff's right shoulder exam was unremarkable, with full range of motion. His left shoulder had full range of motion with crepitus. He also complained of pain in the left hand and locking of the fingers. His left hand continued to be weak as a result of tardy nerve palsy. He was advised not to lift over fifteen pounds or to reach over shoulder level. (Tr. 95, 174). By December 1992, Dr. Frank Jones, another treating physician, indicated he could lift up to 20 pounds, but continued to proscribe overhead lifting. (Tr. 92). In January 1993, Plaintiff complained of bilateral shoulder pain, paresthesia of his left hand and occasional cramping of his left thumb. On exam, he had slightly limited range of motion in both shoulders, crepitus of the left shoulder with range of motion, but no weakness on abduction of either shoulder. His physical therapist reported that he had difficulty with repetitive adduction of the left thumb. Dr. Jones felt he should limit overhead lifting to 30 pounds, and should perform no repetitive pinching-type activities with his left thumb. (Tr. 90). Dr. Tabet evaluated Plaintiff later that month. He felt that Plaintiff had reached maximum improvement in terms of his shoulder injuries and that nothing more could be done to address the numbness in the fingers of his left hand. (Tr. 172).

8.  By April 1993 Plaintiff developed significant signs of persistent impingement in his left shoulder. Surgery was again recommended. (Tr. 164-165). At this point, he changed surgeons, and was evaluated by Dr. Hurley. Dr. Hurley documented significant problems with the left shoulder, an essentially normal exam of the right shoulder, and normal motor function of the left ulnar nerve despite complaints of numbness and pain of the left elbow and forearm. (Tr. 209). He recommended open shoulder decompression to relieve impingement and persistent rotator cuff tendinitis. A fourth operation was performed on June 23, 1993. (Tr.

4

207). By July, Dr. Hurley indicated that Plaintiff had had a good surgical result, had no pain on abduction could use a knife and fork, drive, and continue exercises. He was limited to lifting no more than 30 pounds. (Tr. 207). By October 1993, Dr. Hurley stated that Plaintiff should avoid activities involving prehensile function above shoulder level "such as lifting weight from a high level and moving it down to a lower level," and should also avoid repetitive torquing activities of the shoulder like pulling and pushing. He was to perform no push ups or pull ups, but could engage in non-contact sports, swimming and baseball. (Tr. 208).

9. Plaintiff went to work as a furniture mover in October 1993. (Tr. 61). He suffered a low back sprain shortly after starting work. He was seen by Drs. Ron Battle and Gwen Sun, physicians at Occupational Health Centers of New Mexico, for this injury. They placed him on modified duty and prescribed physical therapy. By November 10, 1993, Dr. Sun released Plaintiff to work provided he lift no more than 40 pounds, and perform no overhead lifting of more than 30 pounds. (Tr. 246-255).[3] He was laid off of this job in December 1993. (Tr. 270). He has not worked since that time.

10. Plaintiff returned to Dr. Hurley in January 1994 complaining of right shoulder pain. MRI examination revealed a tear in the supraspinatus tendon of the right rotator cuff. Another surgery was recommended. Plaintiff also complained of pain and numbness in the ulnar distribution of this left hand. EMG. studies revealed that the muscles of the left hand were no longer enervated, and Plaintiff was encouraged to use his hand. (Tr. 206, 228, 205).

11. Dr. Hurley operated on Plaintiff's right shoulder on February 7, 1994. Plaintiff was seen and evaluated numerous times postoperatively. (Tr. 204). By May 17, 1994, he had

---

[3]The ALJ incorrectly attributed Dr. Sun's treatment, findings and recommendations to George Swajian, D.O.

5

reached a "level of stability." He continued to have pain on abduction and rotation of his shoulder and pain in his left forearm and hand. He was advised to do any activity he was comfortable doing. (Tr. 204). On June 23, 1994, Dr. Hurley wrote to Plaintiff's worker's compensation carrier, stating:

> . . . I have reviewed this patient's chart and records and have attempted to approach his impairment according to the Fourth Edition, AMA Guidelines. These guidelines are really deficient and don't give us much help in consideration of impingement syndrome problems. However, it is apparent that Lawrence has at least 15% impairment of both shoulders. He has an excellent result on the left shoulder, but he has residual neurological problems which affect his prehensile activity and as of this date I am giving him 15% impairment of each shoulder. Mr. Lopez is not capable of returning to work as a laborer.

(Tr. 202).

12. Plaintiff returned to Doctor Hurley in July 1994, complaining of right shoulder pain. On exam, Dr. Hurley could find little tenderness on palpation of the supraspinatus tendon, and x-rays showed no evidence of residual impingement or calcium in the rotator cuff. Plaintiff also complained of pain in his left hand and numbness from his elbow to his fingers. Dr. Hurley advised Plaintiff that his left forearm and hand problem was a permanent residual from his original injury. He treated Plaintiff's shoulder complaints with an injection of steroids and prescribed an anti-inflammatory analgesic. (Tr. 203).

13. Plaintiff apparently underwent a functional capacities evaluation in August 1994. The evaluation is not part of the administrative record. Dr. Hurley reviewed the evaluation and stated that "it would be reasonable" for Plaintiff to do any type of activity within the limits of the evaluation. He also referred Plaintiff to an orthotist for a splint and wrist brace. (Tr. 232).

14. Dr. Hurley evaluated Plaintiff on January 27, 1995. Plaintiff continued to complain of

pain in both shoulders. On physical examination, Plaintiff had excellent abduction, free motion of the rotator cuff, and excellent internal and external rotation. Dr. Hurley commented that there was significant discrepancy between Plaintiff's subjective complaints and physical findings. He reassured Plaintiff and advised him to stay as active as possible. (Tr. 233).

15.     Medical records from this point on were not reviewed by either ALJ, but were submitted to and considered by the Appeals Council at the time of its second consideration of this case. (Tr. 5-7). This evidence is a part of the administrative record. **O'Dell v. Shalala**, 44 F.3d 855, 859 (10th Cir. 1994).

16.     Plaintiff continued to complain of bilateral shoulder pain. In August 1995, Dr. Hurley prescribed Darvocet N 100. (Tr. 300). In November 1995, an examination of Plaintiff's right shoulder showed good abduction and internal and external rotation, and no evidence of impingement. Examination of Plaintiff's left shoulder was negative. Dr. Hurley prescribed Ultram, an analgesic, and a topical cream. (Tr. 300). Examinations in February, May and August 1996 and February 1997 continued to show good function of Plaintiff's right and left shoulders, continued complaints of shoulder pain, and complaints of pain and numbness of Plaintiff's left hand and arm. (Tr. 301). In May 1997, Dr. Hurley noted that Plaintiff had residuals from ulnar nerve surgery, with complaints of pain and weakness in the left forearm and hand. Examination of the hand disclosed intact ulnar sensation and function, with no deformity of the hand. Plaintiff was given a prescription for a new brace for his left hand/arm. Examination of Plaintiff's shoulders was negative. There was no evidence of impingement, and Plaintiff had good range of motion in both shoulders. (Tr. 302). In August 1997, Plaintiff complained of pain in his left shoulder and axilla. On examination, he had good range of

7

motion, good flexion/extension, good internal/external rotation and no indication of impingement. Dr. Hurley stated that his complaints of pain were "largely subjective." He prescribed ibuprofen and Tylenol #3. (Tr. 302). When last seen on September 23, 1997, Plaintiff again complained of shoulder pain. His orthopedic examination was negative. (Tr. 303).

### III.   Plaintiff's testimony

17.   Plaintiff stated that he had no problem walking, sitting or standing, but that he had constant shoulder pain, aggravated by pushing and pulling. In 1995, he took Tylenol ES every two - three hours. (Tr. 315-316, 318). By 1997, he no longer took daily medication. (Tr. 350). He stated that he could sit for 30-60 minutes, stand for 10 minutes and that the swinging motion of his shoulders while walking caused pain as did extending his arms and hands to the front, over his head and sideways. (Tr. 320-322, 328). He complained of pain bending, stooping or squatting. (Tr. 321). He also had numbness and pain in his left arm, from his elbow to his hand, and cramping of his left hand (Tr. 329) all of which reduced the grip strength of this left hand. (Tr. 330). In 1995, he stated he was able to lift 10 pounds. (Tr. 322). In 1997, he stated he was able to lift 20 pounds. (Tr. 349). He wore a brace on his left hand, which impeded use of that hand. (Tr. 355-356). On Dr. Hurley's recommendation, he did stretching exercises for his left arm and hand three times per day. (Tr. 358). He stated that being in a seated position caused him to tense his shoulders, and for that reason it was not a comfortable position. (Tr. 353).

18.   In terms of daily activities, he stated that he drove only occasionally because of hand and shoulder pain, washed dishes, watched TV (Tr. 333, 360), did exercises for his

shoulders, helped shop once a week and visited his family. (Tr. 346-348).

## IV. Vocational testimony

19. A vocational expert ("VE" herein) testified at the administrative hearing after reviewing the relevant records and listening to Plaintiff's testimony. (Tr. 362-375). The ALJ posed a hypothetical question, rephrased by the VE as follows:

> In, in this case, we're talking about an individual who's 36 years of age, has half gone through the 9th grade, basically no limitations of walking and standing. Can bend infrequently. No problems with sitting, needs to stretch their (sic) hand for 10 minutes. Can lift up to 20 pounds which would be in a light category. Has some difficulty with reaching, meaning consistently a forward motion, no swinging motion. Right-hand dominant but some loss of sensation in the left hand.

(Tr. 368).

20. The VE identified the following jobs as within the ability of the hypothetical individual:

| Job title | DOT Number | In Local/Regional Economy | In National Economy |
| --- | --- | --- | --- |
| Lens examiner | 716.687-022 | 20 | 50,000 |
| 40% of Jewelry Manufacturing jobs | 700.381-050 | 50-80 | 20,000 |
| Parking Lot Attendant | 915.473-010 | 100 | 80,000 |
| Lab Sample Carrier | 922-687-054 | 50 | 40,000 |

(Tr. 368-370).

Plaintiff is, however, left handed. (Tr. 90, 321, 354, 370-371). The VE testified that loss of strength of the dominant hand reduced the number of jobs as lens examiner by 50%. (Tr. 372).

9

## V.     The ALJ's Decision

21.    The second ALJ found that Plaintiff had the functional capacity for light work *at all times* relevant to his 1994 applications for benefits. (Tr. 19).[4]  She determined that at all times since Plaintiff's date of onset, his only severe impairment was left shoulder tendinitis (Tr. 16, 21) which prevented him from performing overhead lifting of more than 30 pounds. (Tr. 17).

## VI.    Analysis

22.    I am unable to find that substantial evidence supports this determination. Although the record supports Plaintiff's ability to perform the exertional requirements of light work, the ALJ failed consider well-documented injuries to Plaintiff's left hand and right shoulder. The injury to Plaintiff's left hand caused, at the very least, documented limitation for some period of time in Plaintiff's ability to manipulate that hand.[5] Although the ALJ asked the VE to consider limitations caused by loss of sensation and/or strength of Plaintiff's dominant hand, she failed to include in the hypothetical questions additional undisputed limitations in the use of that hand. The same is true of Plaintiff's right shoulder injury. He required surgery on this

---

[4]This finding contradicts the finding of the first ALJ who found that Plaintiff had been disabled for the closed period of January 15, 1991, to October 8, 1993. In light of this contradiction, the Court asked counsel to advise as to whether Plaintiff received the award of benefits for the closed period. By letter, counsel informed the Court that benefits received for a closed period. That period is not the same as ordered by the first ALJ. (See Ex. 1, attached hereto).

[5]Tr. 179, 7/23/92 - clawing and weakness of the left hand;  Tr. 174, 11/20/92 - weakness of L hand due to tardy nerve palsy; Tr. 90 - 1/19/93, therapist notes difficulty with repetitive adduction of left thumb, Plaintiff to do **no** repetitive pinching type activities with left thumb;  Tr. 172,1/29/93- Continued numbness in fingers; Tr. 229-230,1/3/94 - neuropraxy with neurological injury to the left ulnar nerve postop transplantation of the ulnar nerve; Tr. 204, 3/18/94 - evidence of ulnar neuropathy on the left, fitted with brace to relieve some of the fatigue pain in left wrist and hand.

10

shoulder on two occasions for impingement syndrome, in 1992 and 1994 (Tr. 128, 205). In June 1994, Dr. Hurley stated that the "impairment" to Plaintiff's right shoulder was equal to the impairment of his left shoulder. (Tr. 202). Whether or not the ALJ considered Plaintiff's right shoulder injury to be "severe," she was required to consider the combined effects of all Plaintiff's impairments, which individually may not be medically severe. **See Hargis v. Sullivan**, 945 F.2d 1482, 1491 (10th Cir.1991);**see also** 20 C.F.R. §§ 404.1523, 416.923. There is no indication in her decision that she considered the impact of Plaintiff's right impingement syndrome. A thorough review of the record convinces me that Plaintiff's right shoulder may have had an impact on Plaintiff's residual functional capacity, at least for a closed period of time. The ALJ must make findings of fact on this issue sufficient for the Court to review.

## VII.   Recommended Disposition

23.   I recommend that this matter be remanded to the Commission for additional proceedings. On Remand, the Commissioner shall:

- A. Consider all Plaintiff's impairments, severe and non-severe, providing an explanation for his finding that is supported by reference to the administrative record;

- B. Consider whether Plaintiff is entitled to a closed period of disability, providing an explanation for his finding that is supported by reference to the administrative record;

- C. Present proper hypothetical questions to a vocational expert which include all of Plaintiff's manipulative impairments and functional impairments.

11

Hypothetical questions should take into consideration the issue of whether Plaintiff is entitled to a closed period of disability.

_____
Richard L. Puglisi
**United States Magistrate Judge**

THE EXHIBITS ATTACHED TO THIS PLEADING ARE TOO VOLUMINOUS TO SCAN. SAID EXHIBITS ARE ATTACHED TO THE ORIGINAL PLEADING IN THE CASE FILE WHICH IS LOCATED IN THE RECORDS DEPARTMENT, U.S. DISTRICT COURT CLERK'S OFFICE.